**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ALAN GREENBERG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.: __________** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CITY OF ATLANTA, GEORGIA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff **Alan Greenberg** brings this civil rights action for relief and damages against Defendant **City of Atlanta, Georgia** based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices by the City of Atlanta ("Atlanta"), a Georgia municipality, arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.CA. § 623 *et seq.*

2. Plaintiff Alan Greenberg ("Greenberg") is a Caucasian man who is 67 years old as of the filing of this Complaint. From October 2023 until June 2025, Greenberg served as the Chief Information Security Officer ("CISO") for the City of Atlanta. Greenberg compiled a number of accomplishments in that position including a substantial reduction in the city's response times to external cyber threats; cost savings due to elimination of redundant systems; and an audit of the cybersecurity infrastructure for Atlanta's public safety departments that was widely praised by municipal officials.

3. But despite his successes, Greenberg's career in Atlanta city government was thwarted by a culture of race and age-based favoritism within the department Atlanta Information Management that oversees the Cybersecurity department.

4. In the summer of 2025, within a month of Greenberg filing a charge of Title VII and ADEA discrimination with the Equal Employment Opportunity Commission ("EEOC") and being designated a potential witness in another federal employment discrimination case involving his department, Atlanta ended Greenberg's employment.

5. To address Atlanta's discriminatory and retaliatory practices, Greenberg seeks economic damages of back pay, front pay, lost benefits, and

liquidated damages under the ADEA. Additionally, Greenberg seeks compensatory damages for emotional distress and mental anguish under Title VII, as well as his attorneys' fees and costs of litigation.

## THE PARTIES

6. Plaintiff Greenberg at all times relevant to this complaint was employed by the city government of Atlanta.

7. Atlanta is a municipal entity created by the laws of the state of Georgia and it is an entity subject to suit under Title VII and the ADEA.

## PERSONAL JURISDICTION

8. Atlanta may be served with proper process at the City Hall address at 55 Trinity Ave., Atlanta, Georgia 30303.

## SUBJECT-MATTER JURISDICTION AND VENUE

9. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

10. Venue is proper in this district and division under 28 U.S.C.A. §1391(b)(1)-(2), as Defendants reside in and conduct business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Greenberg filed an initial charge of discrimination and retaliation against Atlanta with the EEOC, Charge No. 415-2025-09130, on May 9, 2025. A subsequent amended charge was filed on June 25, 2025. A copy is attached as Exhibit A.

12. Greenberg subsequently received a right-to-sue letter from the EEOC on September 16, 2025. A copy is attached as Exhibit B.

## FACTUAL ALLEGATIONS

13. For the last fifteen years, Greenberg has served as CISO for a succession of public and private institutions, including the University of Arkansas; HII Technical Solutions, a division of the Naval ship building entity Huntington Ingalls Industries; and the State of Wisconsin.

14. In October 2023, Greenberg was appointed CISO of the city of Atlanta, where he reported directly to the Chief Information Officer ("CIO") for the City of Atlanta, Jason Sankey, who is Black. Sankey runs the Atlanta Information Management Department ("AIM"), which governs the city's information technology infrastructure.

15. During his close to two year tenure, Greenberg was the sole white department head within AIM and the oldest member of its leadership team.

16. Greenberg accumulated a series of achievements as the CISO of the South's largest municipality: dramatic reductions in response times to external threats targeting Atlanta's IT infrastructure; significant cost reductions as a function of Greenberg's elimination of redundancies; a cybersecurity training for citywide department heads; and a widely praised audit of the cybersecurity of Atlanta's public safety departments.

17. Greenberg was one of two municipal CISOs in the country to be nominated for the government leadership award issued by the Scoop News Group, a media outlet specializing in coverage of trends in public sector technology.

18. Despite his accomplishments, Greenberg was subjected to increasingly critical scrutiny by the officials to whom he reported, CIO Sankey, and AIM's Chief of Staff Chloe Broom, a woman in her late thirties or early 40s who is Black or biracial. For example, in December 2024, Greenberg raised concerns about expenditures on a contractor who kept missing repeated internal deadlines. Greenberg was verbally counseled, apparently for alienating the contractor.

19. On other occasions, Greenberg identified reporting errors in performance data provided by internal server teams. When Greenberg sought to instill more accountability, he was counseled for being "too direct" in his criticisms

of the server leadership teams, which primarily consisted of African-American staffers.

20. At other times, Greenberg bore the blame for missteps by other employees in AIM who were not white. At one point, in the summer of 2024, the city incurred an unexpected 1.5 million dollar loss from having to pay a past-due backlog of software licensing fees. The responsible manager in AIM for oversight of the licensing process was Derrick Robinson, a Black man in his 30s. Robinson was not disciplined while Greenberg was reprimanded on the ostensible basis that the licenses involved security functions.

21. In June 2024, Greenberg made a written complaint to the city's Human Resources ("HR") Department alleging that he was being targeted for unwarranted criticism and that his role as CISO was being steadily marginalized within AIM's operational structure.

22. Greenberg also described in his complaint an atmosphere of punishing AIM employees who in any way criticized the operations of the department.

23. The HR department did not undertake any formal investigation of Greenberg's complaint. Greenberg attempted to follow up with meetings with the HR partner assigned to AIM and during those meetings in the summer of 2024, Greenberg raised other examples of growing morale issues within AIM. The city

still failed to follow its internal protocol for investigating complaints of mistreatment.

24. On March 25, 2025, Greenberg was abruptly placed on a performance improvement plan ("PIP") although he had not been subjected to any prior written discipline or provided a negative evaluation, as the HR Department's protocols for PIPs require. On May 9, 2025, Greenberg filed a charge of age and race discrimination with the EEOC.

25. Under the terms of the PIP, Greenberg was assigned a series of metrics for improvement and between April and May 2025, Greenberg and CIO Sankey held three PIP review sessions. Sankey expressed that he believed Greenberg was making significant progress to the point that he achieved a complete success rate on the majority of items and an 80% success rate on the other items.

26. Atlanta's municipal government does not, contrary to some organizations, regard PIPs as an adverse action or an automatic pathway to termination. To the contrary, the city's HR department views a PIP as a focused collaboration on goals and improvement instead of a punishment and upon information and belief, many municipal employees survive PIPs and continue to progress within their departments.

27. Less than a week before the PIP was scheduled to conclude in mid May 2025, Greenberg's attorney disclosed to the city's legal counsel that Greenberg was a prospective witness in an ongoing Title VII retaliation and age discrimination lawsuit involving AIM, *Carla Smith v. City of Atlanta,* Civil Action No. 1:24-cv-04656-ELR-JKL. The plaintiff in that matter and Greenberg are both represented by HKM Employment Attorneys and the disclosure was mandated by the obligations of the Federal Rules of Civil Procedure.

28. In mid May, despite noting that Greenberg had successfully navigated the terms, Sankey advised that he wanted to leave the PIP in place for another month, supposedly to focus on one singular area: improving Greenberg's writing skills on technical documents, an odd critique for an individual who had four recent CISO roles in the public and private sector.

29. The ordinary practice that the HR department recommends is that PIPs end if the employee has demonstrated a turnaround in performance, as Greenberg did by Sankey's own assessment.

30. On May 28, Greenberg's attorney was informed that the City planned to depose Greenberg in Carla Smith's discrimination lawsuit.

31. One week later, on June 5, 2025, Greenberg was suddenly informed by Sankey that he was being terminated and provided a generic form letter that

Georgia is an at-will state. In follow-up conversations with city employees, Sankey has only vaguely said that he had concluded that Greenberg was no longer a "good fit".

32. Consistent with the city's HR policies, Greenberg was permitted to resign in lieu of termination, but Greenberg's departure was unmistakably involuntary.

33. Greenberg's termination can be directly linked to both his decision to initiate EEOC proceedings and by CIO Sankey's perception that Greenberg might provide detrimental testimony about discrimination allegations in another lawsuit.

34. In addition, as extensive discovery in the Smith litigation has unearthed, AIM has a pronounced statistical pattern of replacing terminated individuals in their 50s or 60s with new personnel under the age of 40. In fact, 16 of the 20 AIM employees under Sankey's administration who have been terminated or permitted to resign were initially replaced by persons in their 30s. A strong majority of the fired employees in that time frame have been over 50.

## CAUSES OF ACTION

## COUNT I

**(Retaliatory termination in violation of Title VII, 42 U.S.C.A. § 2000e-3(a))**

35. Plaintiff Greenberg incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

36. Plaintiff Greenberg engaged in protected activity under Title VII in that he filed a charge of race discrimination with the Equal Employment Opportunity Commission on May 9, 2025, and was soon after identified as a witness in another federal discrimination lawsuit alleging Title VII claims. Less than 30 days after the charge, Plaintiff was terminated.

37. But for Plaintiff's Title VII protected activity, he would not have been terminated.

38. As a result of the retaliatory conduct by the City of Atlanta under Title VII, Plaintiff has suffered monetary damages, including but not limited to back pay and front pay; loss of economic opportunity and future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II

**(Retaliatory termination in violation of the Age Discrimination in Employment Act, 29 U.S.C.A. § 623 (d))**

39. Plaintiff Greenberg incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

40. Plaintiff Greenberg engaged in protected activity under the ADEA in that he filed a charge of age discrimination with the Equal Employment Opportunity Commission on May 9, 2025, and was soon after identified as a witness in another federal discrimination lawsuit alleging ADEA claims. Less than 30 days after the charge, Plaintiff was terminated.

41. But for Plaintiff's ADEA protected activity, he would not have been terminated.

42. As a result of the retaliatory conduct by the City of Atlanta under the ADEA, Plaintiff Greenberg has suffered monetary damages, including but not limited to back pay and front pay, as well as loss of economic opportunity and future benefits. Plaintiff is further entitled to liquidated damages because of the willful violation of his right to be free from retaliation under the ADEA.

## COUNT III

**(discriminatory termination in violation the Age Discrimination in Employment Act, 29 U.S.C.A § 623(a)(1))**

43. Plaintiff Greenberg incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

44. Plaintiff Greenberg at the time of his termination was 66, making him a protected person under the ADEA.

45. The City of Atlanta has built a statistical track record of disproportionately terminating older employees and replacing them with significantly younger individuals and during the course of his employment, Plaintiff was subjected to more negative scrutiny than substantially younger employees.

46. Plaintiff's age was a but-for cause of his termination.

47. As a result of the discriminatory conduct by the City of Atlanta under the ADEA, Plaintiff Greenberg has suffered monetary damages, including but not limited to back pay and front pay, as well as loss of economic opportunity and future benefits. Plaintiff is further entitled to liquidated damages because of the willful violation of his right to be free from discrimination under the ADEA.

## COUNT IV

**(Discriminatory termination in violation of Title VII, 42 U.S.C.A. § 2000e-2(m))**

48. Plaintiff Greenberg incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

49. Plaintiff was subjected to less favorable treatment during the course of his employment than peers in his department who were Black or non-Caucasian.

50. Plaintiff's race was at least a motivating factor in his termination, even though other factors may have also motivated the decision.

51. As a result of the discriminatory conduct by the City of Atlanta under Title VII, Plaintiff has suffered monetary damages, including but not limited to back pay and front pay; loss of economic opportunity and future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the extent allowed by law under Title VII.

C. Liquidated damages under the ADEA.

D. Attorneys' fees and costs of litigation.

E. Pre-judgment and post-judgment interest at the highest lawful rate.

F. Such other equitable and monetary relief as the court deems just and proper.

G. A declaratory judgment that Defendant's actions violated Plaintiff's statutory rights and that Defendant shall refrain from future unlawful discriminatory conduct in its employment practices.

Respectfully submitted the 15th day of December, 2025.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

Jerilyn Gardner
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Counsels for Plaintiff Alan Greenberg**

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.